**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**CASE NO.    22-80360-CIV-CANNON**
**22-81569-CIV-CANNON**

**TRADEINVEST ASSET MANAGEMENT**
**COMPANY (BVI) LTD.**, **FIRST OCEAN**
**ENTERPRISES SA**, and **TECHVIEW**
**INVESTMENTS LTD.**,

      Plaintiffs,

v.

**WILLIAM "BEAU" WRIGLEY, JR.**,
**JAMES HOLMES, JAMES WHITCOMB**,
**SH PARENT INC. d/b/a PARALLEL**, and
**SURTERRA HOLDINGS, INC.**,

      Defendants.

_____/

**LEGACY KNIGHT STRATEGIC**
**OPPORTUNITIES FUND-PARALLEL**
**SERIES**,

      Plaintiff,

v.

**WILLIAM "BEAU" WRIGLEY, JR.**,
**JAMES HOLMES, JAMES WHITCOMB**,
**SH PARENT INC. d/b/a PARALLEL,** and
**SURTERRA HOLDINGS, INC.**,

      Defendants.

_____/

**JOINT STIPULATION ON THE PROTOCOL FOR DISCOVERY OF**
**ELECTRONICALLY-STORED INFORMATION AND HARD COPY DOCUMENTS**

To expedite the exchange of electronically-stored information ("ESI") and hard copy documents pursuant to Fed. R. Civ. P. 26, Plaintiffs TradeInvest Asset Management Company (BVI) Ltd., First Ocean Enterprises SA, Techview Investments Ltd. and Defendants William "Beau" Wrigley, Jr., James Holmes, and James Whitcomb—joined by Plaintiff in a related action, Legacy Knight Strategic Opportunities Fund-Parallel Series and additional Defendants in the *Legacy Knight* action SH Parent Inc. d/b/a Parallel and Surterra Holdings, Inc. (collectively, the "Parties")—by and through undersigned counsel of record, hereby stipulate to the entry of the following Protocol for Discovery of ESI and hard copy documents ("ESI Protocol") in both of the above-captioned actions.[1]

The Parties stipulate as follows:

## I.  **DEFINITIONS**

The following definitions shall be used in construing the meaning of the ESI Protocol contained herein:

    a.  "**Communication**" or "**Communications**" refers to any exchange of information by any means of transmission.

    b.  "**Document**" or "**Documents**" shall have the same meaning and be equal in scope to the usage of the term in Rule 34(a) of the Federal Rules of Civil Procedure, and includes any "Communications" as defined above, as well as "writings" and "recordings" as defined by Rule 1001 of the Federal Rules of Evidence. A non-identical copy or translation is a separate document within the meaning of this term.

    c.  "**Electronically-stored Information**" or "**ESI**," as used herein, refers to computer-generated information or data, stored in or on any storage Media located on computers, file servers, disks, tapes, USB drives, or other real or virtualized devices

---

[1]    On February 20, 2024, the Court entered the Order Consolidating Cases, which consolidated both of the above-captioned actions for discovery purposes only. ECF No. 151, Case No. 22-80360; ECF No. 79, Case No. 22-81569. Accordingly, the Parties have jointly filed this ESI Protocol in both actions. As used herein, "Plaintiffs" refers to all Plaintiffs in both actions. "Defendants" refers to Defendants William "Beau" Wrigley, Jr., James Holmes, and James Whitcomb in both actions *and* Defendants SH Parent Inc. d/b/a Parallel and Surterra Holdings, Inc. in the *Legacy Knight* action alone.

or Media, as such information is defined in the Federal Rules of Civil Procedure, including Rule 34(a).

d. "**Extracted Text**" refers to the text electronically extracted from a Document and includes all header, footer, and Document body information, when reasonably available.

e. "**Load File**" or "**Unitization File**" refers to an electronic file containing information identifying a set of paper-scanned images or processed ESI and indicating where individual pages or files belong together as Documents, including attachments, and where each Document begins and ends. A Load File or Unitization File will also contain data relevant to the individual Documents, including extracted and user-created metadata.

f. "**Media**" refers to an object or device, including, but not limited to, a disc, tape, computer, or other device, irrespective of whether in the Producing Party's physical possession, on which data is or was stored.

g. "**Native Format**" refers to the format of ESI in which information or data was generated and/or as used by the Producing Party in the usual course of its business and in its regularly-conducted activities. Where ESI is not stored in a portable Native Format, a usable exported format will suffice.

h. "**OCR Text**" refers to text generated through an optical character recognition process.

i. "**Parties**" refers collectively to all Plaintiffs in both of the above-captioned actions (TradeInvest Asset Management Company (BVI) Ltd., First Ocean Enterprises SA, Techview Investments Ltd., and Legacy Knight Strategic Opportunities Fund-Parallel Series); Defendants William "Beau" Wrigley, Jr., James Holmes, and James Whitcomb in both actions; and Defendants SH Parent Inc. d/b/a Parallel and Surterra Holdings, Inc. in the *Legacy Knight* action alone.

j. "**Party**" shall refer to one or more Plaintiffs or Defendants, individually.

k. "**Producing Party**" refers to a Party in the above-captioned case from which production of ESI or hard copy Documents are sought.

l. "**Requesting Party**" refers to a Party in the above-captioned case seeking production of ESI or hard copy Documents.

II.   **PRODUCTION**

   a. **DeDuplication**

i.  <u>General</u>. The Parties shall use reasonable, good-faith efforts to avoid the production of duplicate ESI following industry-standard practices for MD5 or SHA-1 hash comparison. Deduplication must be applied at a family level.

ii.  <u>Duplicates</u>.

1.  To the extent that duplicate Documents (based on MD5 or SHA-1 hash values) reside within a Party's ESI data set, each Party shall endeavor to produce only a single copy of a responsive Document or record. Where any such Documents have attachments, hash values must be identical for the Document-plus-attachment ("family deduplication"). Loose electronic Documents shall not be compared to email attachments for deduplication. The Parties shall deduplicate email data across custodians and sources at a family level.

2.  For any Custodian determined to have a copy of an email, email family, or loose electronic Document in its collection, said Custodian value shall be listed in the All Custodians metadata field for every document in the family.

3.  To the extent emails or electronic Documents are deduplicated, the parties agree to produce an "All File Paths" field containing the file path for the Document and all duplicates.

iii.  <u>No Manual Review</u>. No Party shall identify and/or eliminate electronic duplicates by manual review or some method other than by use of the technical comparison using MD5 or SHA-1 hash values outlined above.

b.  **Paper Production Format**

i.  <u>Production</u>. All paper Documents shall be produced as static images: The images will be in black-and-white, single page, 300 DPI, Group IV. TIFF images ("TIFFs"), and OCR in .TXT format with standard Load Files, which can be used with commercially available litigation software packages, and the Default Production Fields as described in **Exhibit A**. Hard copy color paper Documents will be produced in grayscale in TIFF format. The Parties will accommodate reasonable requests for production of specific images in color to the extent available. Producing Paper Documents in such form does not change their character from Paper Documents into ESI.

ii.  <u>Unitization</u>. If a Document is more than one page, to the extent possible, the unitization of the Document and any attachments or affixed notes should be maintained as it existed when collected by the Producing Party. Parties may unitize their Documents using either physical unitization (*i.e.*, based on physical binding or organizational elements present with the original paper

4

Documents like staples, clips, and binder inserts) or logical unitization (*i.e.*, a manual review of the paper to determine what logically constitutes a Document like page numbers or headers). If unitization cannot be reasonably maintained, the original unitization should be documented in the data Load File or otherwise electronically tracked, if reasonably possible.

c. **ESI Production Format**

  i. <u>General</u>. The following provisions shall generally govern the production format and procedure for ESI and are subject to the other provisions contained herein.

  1. Black-and-white, single page, 300 DPI, Group IV TIFFs.

  2. Delimited Load Files for Documents (.DAT) containing a field with the full path and filename to native and text files along with the metadata fields identified in **Exhibit A**, to the extent that the fields can be extracted. The Parties are not obligated to manually populate any of the fields in **Exhibit A** if such fields cannot be reasonably extracted from a Document, provided that the Producing Party provides confidentiality and redaction information for those Documents;

  3. Load files for images (.OPT) containing the Bates number and file path;

  4. Document level .txt files for all Documents containing Extracted Text or OCR Text if Extracted Text is unavailable or if the Document has been redacted;

  5. Bates number and Confidentiality designation (if any) on the face of the image;

  6. Compression file styles (*e.g.*, .ZIP) shall be decompressed in a reiterative manner to ensure that, for example, a .ZIP within a .ZIP is decompressed to the lowest possible level of compression, resulting in individual folders and/or files.

  ii. <u>Production of Non-Native ESI</u>.

  1. All hidden text (*e.g.*, tracked changes, hidden columns, comments, notes, markups) will be expanded, extracted, and rendered in the TIFF file, including, but not limited to, the inclusion of any notes or comments contained within any PowerPoint slides/presentations that are produced in TIFF format;

iii. <u>Production of Native Format ESI</u>.

1. Spreadsheets (*e.g.*, Excel, Lotus, Google Sheets, CSV) and Media files (*e.g.*, .WAV, .MP3, .MP4, .MOV, .WMV, .MPEG), shall be produced in Native Format, except where such files are redacted. For Google Documents, production of an export in a comparable format will constitute native production (*e.g.*, Google Sheets Document exported in Microsoft Excel format).

2. A TIFF placeholder endorsed with the corresponding Bates number and confidentiality designation (if any) shall be produced for all ESI produced in Native Format.

iv. <u>Request for Documents in Native Format</u>. If a Party reasonably concludes that production in Native Format of any Document(s) initially produced in TIFF format is necessary (*e.g.*, to decipher the complete meaning, context, or content; to determine whether there is any important use of color in the Document), such Party may request production of the original Document in Native Format. The Parties agree to meet and confer in good faith with respect to any such request. Reasonable requests for specific Documents in Native Format, accompanied by a reasonable explanation for the request, shall not be refused.

v. <u>Email Attachments</u>. The Parties shall collect and produce files attached to emails.

1. If a Party's document management system uses hyperlinked Documents or modern attachments, the Parties shall make best efforts to obtain and produce the version of the Document that existed at the time the email was sent. The Parties shall meet and confer if a Party cannot collect the hyperlinked Documents or modern attachment sent at the time the email was sent.

2. Nothing in this subsection shall restrict the Parties' abilities to provide placeholder images for any non-email attachment validly withheld on the basis of privilege or email attachments with privilege redactions in accordance with the terms of this ESI Protocol or any operative Protective Order or other Court order.

vi. <u>Appearance and Content</u>. Except for Documents containing redactions, no Document may be intentionally manipulated to change how the source Document would have appeared if printed out to a printer attached to a computer viewing the file, without prior agreement of the Requesting Party.

vii. <u>Color</u>. On a case-by-case basis, the Parties will accommodate reasonable requests made in good faith for the production of specific color images originally produced in greyscale TIFF format to the extent available and

where reasonably necessary to decipher the complete meaning, context, or content of the Documents.

viii. <u>Production Stamping</u>. Each page of a Document produced as TIFFs shall have a legible, unique Bates Number electronically "burned" onto the image at a location that does not obliterate, conceal, or interfere with any information from the source Document (*i.e.*, the "Bates number"). Each file produced in Native Format shall be named by the Bates number, with a TIFF placeholder containing the same Bates number. Documents produced in Native Format shall also contain the confidentiality endorsement in the file name.

1. Bates numbering shall be consistent across the production and be numerically sequential. Each Document produced shall be identified with a Bates number, according to the following protocol:

   a. The first portion of the Bates number shall contain a prefix which clearly identifies the producing party.

   b. The second portion of the Bates number shall contain nine (9) numeric digits, padded with leading zeroes as needed to preserve its length.

2. If a Bates number or set of Bates numbers is skipped, the skipped number(s) should be noted with a placeholder. Within a family, be it emails and attachments or eDocs and attachments, Bates numbers shall be sequential within the family.

ix. <u>Organization of Hard Copy Production</u>. A Producing Party shall organize Documents originally existing in hard copy as they are kept in the ordinary course of business, taking care to scan and produce folders, red welds, binder-covers, and maintain other organizational structure. Such materials should be produced as independent Documents and be produced before the Documents that were contained in these elements to the extent reasonably accomplishable by the above-addressed unitization (*e.g.*, the file folder should have a Bates number immediately before the Documents contained in the file folder). The Producing Party will provide the name of the custodian who had possession of the Document upon its collection. A custodian can include an employee or person's name, a department, or an archive storage if the Document was stored in archive when the Party's duty to preserve was triggered; provided, however, to the extent that archived files include custodial information, it shall be provided.

x. <u>Family Relationships of Electronic Files</u>.

1. Each party shall preserve and appropriately reflect in a Load File the association between an attachment and its parent Document for ESI.

2. A parent email, whether it contains attachments or not, containing both privileged and responsive, non-privileged content shall be produced with the privileged information redacted. Headers (i.e., From/To/CC/BCC/Date/Time) for all emails in the email chain shall be produced intact.

3. In a family being produced, any non-email attachment which is withheld on the basis of privilege shall either (i) be replaced with a Bates-stamped TIFF placeholder identifying the attachment as withheld as privileged; or (ii) be redacted in full and produced with Bates numbers on each page.

4. In a family being produced, any email attachment which contain privileged information shall have only the privileged information redacted, with header information (e.g., From, To, Sent Time) being produced in unredacted form.
   a. The exception to header information being produced in unredacted form is if that header information is redacted as personally-identifiable information as outlined in Paragraph c.xv.5.

xi. <u>Email Suppression</u>. In the course of its review and production, a Party may produce only the Inclusive emails, defined as those emails within an email thread containing all unique content as determined by commonly-accepted threading analytics tools. A party may reasonably request production of an individual lower included email or emails from a produced email thread, and any such reasonable requests shall not be refused where the Document is available within the Producing Party's Document collection. For the sake of clarity, if any portion of the Inclusive email thread is privileged, the privileged information shall be redacted and the non-privileged information shall be produced, with header information included as outlined in Paragraph II.c.x. Additionally, any data which cannot be threaded must be reviewed in full with all responsive, non-privileged documents being produced.

xii. <u>Production Media</u>. Documents shall be produced via a secure file transfer protocol ("FTP") site or an external hard drive or flash drive for productions that are too large for expedient FTP transfer pursuant to Section II.c.xiii below, or such other readily accessible computer or electronic Media as the Parties may hereafter agree upon (the "Production Media"). Each piece of Production Media shall include a unique identifying label and cover letter or email including the following information:

1. Name of the litigation and its case number;

2. Name of the Producing Party;

3. Date of the production in MM/DD/YYYY format;

4. Volume number;

5. Bates range;

6. Highest confidentiality designation; *and*

7. Notes regarding any irregularities in the production (*e.g.*, whether it is replacement Production Media, as discussed in Section II.c.xiv).

xiii.  <u>Production Media (FTP Sites)</u>.

1. Producing Parties shall produce initially via an FTP site for production volumes equal to or less than 100 GB. Production volumes of a larger size than 100 GB may be produced by FTP in the process described above or via an external hard drive or flash drive pursuant to Section II.c.xiii.

2. Any replacement productions shall cross-reference the original production volume, clearly identify that it is a replacement, and Bates stamp the documents being replaced using the same Bates numbers which shall now contain a **-A** suffixed Bates number on each reproduced page.

3. Producing Parties may encrypt their production media and, if so, shall provide a key or password to decrypt the production media in a separate communication.

xiv.  <u>Time</u>.

1. When processing non-email ESI for production in TIFF format, the Producing Party will instruct its vendor to turn off any automatic date stamping.

2. When processing ESI, the time zone that the Producing Party has used to normalize time stamps during processing will be provided in the production metadata.

3. Parties must produce all ESI in the same time zone.

    4.   When a metadata field includes a date and/or time, it shall be provided in the following format: MM/DD/YYYY HH:MM:SS.

xv.  <u>Redactions</u>. To the extent that a responsive Document contains (a) privileged content, or (b) the types of personally-identifiable information set forth in Fed. R. Civ. P. 5.2, the Producing Party may produce that Document in a redacted form.

    1.   Any privilege redactions shall be clearly indicated on the face of the Document with any redacted information bearing a designation that it has been redacted. The designation shall make clear that the redaction is to withhold privileged information (*e.g.*, "Redacted Privileged").

    2.   Spreadsheets (*e.g.*, Microsoft Excel, Google Sheets) requiring redactions are required to be produced with native redactions.

    3.   Where a Document contains both privileged and non-privileged responsive content, the Producing Party shall redact the privileged material as outlined in this ESI Protocol and produce the remainder of the Document without redactions.

    4.   Metadata shall not be withheld for Documents redacted for privilege, except that if a Party desires, it may withhold the following metadata (Subject; FileName; Attachment Names; All File Path; and MD5 Hash). These five metadata fields can be withheld for all Documents containing privileged redactions regardless of whether this metadata is redacted for privilege. No other metadata shall be withheld from Documents redacted for privilege.

    5.   Redactions for personally-identifiable information shall be made with a black box.

    6.   If metadata is being redacted for personally-identifiable information, that particular metadata shall be withheld from the production deliverable.

    7.   All Documents containing a redaction, whether on the image or within the native Document, shall contain a "Yes" value in the Redacted field as outlined in the Default Production Fields in Exhibit A.

    8.   The Parties agree to meet and confer in good faith to attempt to resolve any dispute arising under this paragraph.

d. **Search Protocol**

    i. <u>Identification of Individual and Departmental Custodians</u>. ESI will be collected from an agreed upon-set of custodians for each Party. Simultaneously with the service of its initial responses and objections to requests for production, a Party shall propose a list of its own custodians from whom it proposes to collect ESI. The other Party may propose additional custodians, and the Parties shall expeditiously confer in good faith to finalize a custodian list. If, after a Party has made a Document production, the Receiving Party believes that the Producing Party failed to identify relevant custodians, the Parties agree to expeditiously meet and confer in good faith to resolve whether the Producing Party must collect ESI from the additional custodians. If a Party maintains an enterprise-wide archive of electronic messages through Global Relay Archive or a similar service, the Party may collect those message types from that archive and need not collect or produce the corresponding electronic files at the individual custodian level. If a dispute arises and cannot be resolved through the meet-and-confer process, any Party may seek relief from the Court.

      In order to reduce the burden of searching for, reviewing, and producing relevant and responsive electronically-stored information, the Parties agree to attempt to locate such information through the use of custodians and search terms, provided, however, that this process shall not alleviate either party of its burden to reasonably locate and produce (among other things) relevant and responsive electronically-stored information that, inter alia, a party knows about or should know about through the use of reasonable diligence in discovery.

    ii. <u>Protocol For Agreeing on Use of Search Filters</u>. The Parties agree that the application of search terms is an appropriate step to reasonably identify potentially responsive Documents or to cull ESI once the material is collected from the appropriate data source. However, this shall in no way displace the obligation of a party to locate responsive data that can reasonably be located without the use of search terms (for example, if a custodian has a folder whose subject is likely to pertain to the disputed issues between the parties, the party may need to review the entire folder). Each Party may take reasonable steps to develop search terms to identify potentially responsive Documents including undertaking reasonable steps to test and validate the recall (how many Documents determined to be responsive that were actually identified using search terms) and precision (how precise the search terms are, measuring how many non-relevant Documents were also search term hits, or how many non-relevant Documents one would have to review to find the relevant Documents in the Document universe) of the terms.

Simultaneously with the service of its initial responses and objections to requests for production, a Party shall expeditiously propose a list search terms. The other Party may propose additional search terms, and the Parties shall meet and confer in an effort to agree upon search terms to be run against potentially responsive ESI. As part of the meet and confer process, a Producing Party may propose adjustments to search terms and/or custodians to whom they are applied based on the number of hits returned. The Parties shall continue to confer in good faith regarding the scope and content of the search terms and custodians. Additional search terms may be added as needed based on continuing negotiations over the discovery requests or based on the review of Documents produced throughout discovery. The Parties acknowledge that search terms may not be appropriate for searching non-custodial information sources and will use appropriate alternative means to search those sources. If a dispute arises and cannot be resolved through the meet-and-confer process, any Party may seek relief from the Court.

iii.   <u>Temporal Scope</u>. Simultaneously with the service of its initial responses and objections to requests for production, a Party shall propose a temporal scope of discovery. The other Party may provide a responsive proposal, and the Parties shall expeditiously meet and confer in an effort to agree upon the appropriate temporal scope of discovery, which scope may differ depending upon the specific request or type of ESI sought. If a dispute arises and cannot be resolved through the meet-and-confer process, any Party may seek relief from the Court.

iv.   <u>Search Term Testing and Validation</u>. While there are potentially numerous ways to reasonably test and validate search terms, a Producing Party may test the efficacy of proposed search terms by assessing hit reports and/or by sampling individual query results or cumulative results, and during the meet and confer process may support the exclusion of disputed search terms by reference to such statistical hit reporting and/or intelligence garnered from such sampling, provided, however, that if a Producing Party relies upon such statistical hit reporting and/or intelligence for the exclusion of certain search terms it must first provide to the Requesting Party the underlying "hit rate data" (*i.e.*, total number of Documents searched, number of aggregate hits, number of unique hits, etc.) relating to such search terms.

v.   <u>Search and Production</u>. The fact that ESI may have been retrieved or identified by application of search terms shall not prevent any Party from withholding from production such ESI for privilege or other permissible objection. Notwithstanding the foregoing, to the extent any Party identifies responsive ESI not identified by the use of search terms or filters, all such non-privileged ESI must be produced, subject to the Parties' objections to discovery requests and privileged ESI will be logged to the extent required by this agreement.

e.   **Use of Technology-Assisted Review**

   i.   The Parties agree to meet and confer at a later date about the appropriateness of any technology-assisted review, to the extent that any party proposes the use of such technology. The Parties reserve the right to seek modification of this protocol to the extent that they reach an agreement concerning technology-assisted review. Each Party also reserves the right to seek relief from the Court, to the extent that it is unable to amicably resolve any disputes about the use or nonuse of technology-assisted review.

f.   **Structured Data Format**

   i.   To the extent a response to discovery requires production of discoverable electronic information contained in a database and it cannot reasonably be produced in either Excel or .CSV format, in advance of producing such information, the Parties agree to meet and confer regarding the format of the production (e.g., commercial database, or some other agreed-upon format). If the structured data exists in a proprietary database format, and an exportable electronic file cannot be created in a reasonably usable format, then the Parties will meet and confer regarding utilizing the proprietary software to generate the production in an alternative format or other options.

g.   **Confidentiality of Produced ESI**

   i.   <u>TIFF Format</u>. For ESI produced in TIFF format which is subject to a claim that it is protected from disclosure under any protective or confidentiality order, or any agreement entered into or order issued in this matter, shall be endorsed on each page of the Document with "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY." The Party shall also include in the Load File (.DAT) a designation that the Document is protected and the level of protection as outlined in the metadata fields in Exhibit A.

   ii.   <u>Native Format</u>. For ESI produced in Native Format which is subject to a claim that it is protected from disclosure under any protective or confidentiality order, or any agreement entered into or order issued in this matter, the designation of "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY" may be included in the filename and shall also be endorsed on the TIFF placeholder or storage device (e.g., CD, USB, hard drive) containing the native data. The Party shall also include in the Load File (.DAT) a designation that the Document is protected and the level of protection as outlined in the metadata fields in Exhibit A.

III.  **CLAWBACK**

    a.  Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product-protected document is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding.

    b.  A producing party may assert privilege or protection over produced documents at any time by notifying the receiving party in writing of the assertion of privilege or protection. After being notified, a party must promptly return or destroy the specified information and any copies it has and may not sequester, use or disclose the information until the claim is resolved. This includes a restriction against presenting the information to the court for a determination of the claim. Information that contains attorney-client privilege or attorney work product shall be returned immediately if requested.

    c.  Nothing in this Agreement shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. The parties do not waive any objections to the production, discoverability, admissibility, or confidentiality of documents and ESI.

IV.  **PRIVILEGE AND REDACTION LOGS**

    a.  Privilege Log. Each Document withheld on account of an asserted attorney-client privilege or attorney work product shall be identified in a privilege log pursuant to Rule 26(b)(5) of the Federal Rules of Civil Procedure.

        i.  As threading may be used by the Parties such that only Inclusive emails are produced, only the top-level email must be logged.

        ii.  The Party withholding or redacting any responsive document on the grounds of any privilege or immunity claim shall provide to the other Party a Privilege Log which shall contain the following information for each document withheld:

            1.  Privilege Log Entry Number;
            2.  the date of the email, or if an attachment, the date of the parent email;
            3.  the identity of person(s) who sent, authored, signed or otherwise prepared the document, and if an email, including their email address (e.g., Jane Doe (jdoe@gmail.com);
            4.  the identity of all persons designated as recipients, CCs, or BCCs;
            5.  a description of the contents of the document that, without revealing information that is allegedly privileged or protected, is sufficient to understand the subject matter of the document and the basis of the claim of privilege or immunity; and

14

      6.  the type or nature of the privilege asserted (e.g., attorney-client, work product, common interest, etc.).

    iii.  Privilege logs shall be produced no later than 3 weeks after the substantial completion date.

  b.  <u>Redaction Log.</u>

    i.  So long as the redaction language on the image comports with Paragraph II.c.xvi and the document's metadata is fully produced (except for any metadata agreed to be withheld as noted herein), a redaction log for privilege redactions shall not be required.

    ii.  On a document-by-document basis, a Party may request additional information about a privilege redaction. To avoid confusion, any privilege redactions shall not be made with a black box.

    iii.  Redactions for personally-identifiable information shall be made with a black box and need not be logged.

## V.  <u>**MISCELLANEOUS**</u>

  a.  <u>Variance</u>. Any practice or procedure set forth herein may be varied by agreement of the Parties without order of this Court. Failure of the Parties to agree on any modifications for good cause shown may be raised with the Court as necessary and in accordance with all applicable rules, including the Federal Rules of Civil Procedure.

## VI.  <u>**OBJECTIONS**</u>

  a.  <u>General</u>. The Parties do not waive any objections to the relevance, responsiveness, production, discoverability, possession, custody, control, or confidentiality, including (without limitation) objections regarding the burden, overbreadth, or relevance of Document requests. Nothing in this Agreement shall be interpreted to require the disclosure of irrelevant information, relevant information that is overly burdensome, or relevant information protected by the attorney-client privilege, work product immunity, or any other applicable privilege or immunity or is otherwise not discoverable.

  b.  <u>No Waiver of Rights Regarding Review</u>. By entering this Joint Stipulation, no Party has released or given up its right to review its Documents for privilege or any other reason (including to identify non-responsive Documents) and the existence of this Joint Stipulation cannot be used to compel a Party to produce Documents without review. Moreover, this Joint Stipulation does not mean that the cost of review should not be considered in whether any particular discovery is disproportionate

(*i.e.*, that the marginal benefit of the discovery is not as great as the marginal cost of said discovery including review).

c.  <u>Disputes</u>. The Parties shall meet and confer in an attempt to resolve any objections.

DATED: March 4, 2024

Respectfully submitted,

**MARCUS NEIMAN RASHBAUM &**
**PINEIRO LLP**

By: /s/ *Jason L. Mays*

Jeffrey E. Marcus, Esq.
Florida Bar No. 310890
jmarcus@mnrlawfirm.com
Jason L. Mays, Esq.
Florida Bar No. 106495
jmays@mnrlawfirm.com
2 S. Biscayne Blvd., Suite 2530
Miami, Florida 33131
Tel: (305) 400-4262
Fax: (954) 688-2492

**WILLKIE FARR & GALLAGHER LLP**
Sameer Advani (*pro hac vice*)
Brittany M. Wagonheim (*pro hac vice*)
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 728-8000
sadvani@willkie.com
bwagonheim@willkie.com

Craig C. Martin (*pro hac vice*)
Aaron J. Hersh (*pro hac vice*)
300 N. LaSalle Drive
Chicago, IL 60654
Telephone: (312) 728-9000
cmartin@willkie.com
ahersh@willkie.com

*Attorneys for Defendant William "Beau"*
*Wrigley, Jr.*

**ZEBERSKY PAYNE SHAW LEWNENZ**
**LLP**

By: /s/ *Zachary D. Ludens*

Jordan Alexander Shaw (FBN 111771)

**QUINN EMANUEL URQUHART &**
**SULLIVAN LLP**

By: /s/ *Jason D. Sternberg*

John O'Sullivan (Fla. Bar No. 143154)
Jason D. Sternberg (Fla. Bar No. 72887)
2601 South Bayshore Drive, Suite 1550
Miami, FL 33133
Telephone: (305) 439-5008
johnosullivan@quinnemanuel.com
jasonsternberg@quinnemanuel.com

Michael B. Carlinsky (*pro hac vice*)
Susheel Kirpalani (*pro hac vice*)
Jacob J. Waldman (*pro hac vice*)
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000

Secondary: olgagarcia@quinnemanuel.com

*Attorneys for the TradeInvest Plaintiffs*

**SAUL EWING LLP**

By: /s/ *Hilda Piloto*

Hilda Piloto
Florida Bar No. 0154120
701 Brickell Avenue, 17th Floor
Miami, FL 33131
Telephone: (305) 428-4500
hilda.piloto@saul.com
tracy.alger@saul.com
aida.mclaughlin@saul.com
mia-ctdocs@saul.com

Casey Grabenstein, Esq. (*pro hac vice*)
161 North Clark Street, Suite 4200
Chicago, IL 60601
Telephone: (312) 876-7810

jshaw@zpllp.com
Zachary Dean Ludens (FBN 111620)
zludens@zpllp.com
Lauren Nicole Palen (FBN 1038877)
lpalen@zpllp.com
110 Southeast 6th Street
Suite 2900
Fort Lauderdale, FL 33301
954-595-6075

*Attorneys for Defendant James Holmes*

casey.grabenstein@saul.com

John F. Stoviak, Esq. (*pro hac vice*)
1200 Liberty Ridge Drive, Suite 200
Wayne, PA 19087
Telephone: (610) 251-5056
john.stoviak@saul.com

Kayleigh T. Keilty, Esq. (*pro hac vice*)
1001 Fleet Street
Baltimore, MD 21201
Telephone: (410) 332-8600
kayleigh.keilty@saul.com

*Attorneys for Defendants SH Parent Inc. d/b/a Parallel, Surterra Holdings Inc., and James Whitcomb*

**NASON YEAGER GERSON HARRIS & FUMERO, P.A.**

By: /s/ *Gary A. Woodfield*

Gary A. Woodfield
Florida Bar No. 563102
3001 PGA Blvd., Suite 305
Palm Beach Gardens, Florida 33410
(561) 686-3307
gwoodfield@nasonyeager.com

**MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.**

Kaitlyn A. Crowe (*pro hac vice*)
919 Third Avenue
New York, NY 10022
Phone: 212.935.3000
Fax: 212.983.3115
kacrowe@mintz.com

*Attorneys for Plaintiff Legacy Knight Strategic Opportunities Fund – Parallel Series*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this March 4, 2024, the foregoing was filed with the Court via the Court's CM/ECF system on the dockets for Case No. 22-80360 and Case No. 22-81569, which generated notices of electronic filing on all counsel of record.

<u>*/s/ Jason L. Mays*</u>
Jason L. Mays
Florida Bar No. 106495

## EXHIBIT A

I.   **PRODUCTION FIELDS**

The following metadata fields will be provided for all Documents in the production, to the extent the metadata is extractable during processing. Specific metadata associated with redacted Documents may be withheld from the production as outlined in Paragraph II.C.xv.

| FIELD NAME | DESCRIPTION |
|---|---|
| Begin Bates | Beginning Bates number |
| End Bates | Ending Bates number |
| Begin Attachment | Beginning Bates number of a family group |
| End Attachment | Ending Bates number of a family group |
| Attachment Count | Number of attachments to an email |
| Attachment Name | The file name(s) of all attachments |
| Parent Date and Time | Date and time of the parent Document; must be in the "MM/DD/YYYY HH:MM:SS" format. This value shall be populated to the full email or Document family. |
| Parent ID | Bates number of the parent email (populated for attachments only) |
| Child ID | Bates number of the attachment(s) (populated for parent emails only) |
| All Custodians | The original custodian, and all other custodians, separated with a multi-value delimiter, from whom the Document was collected and who possessed the Document. For Documents from centralized repositories where custodian name is unavailable, identifying source information should be provided. |
| Confidentiality | The confidentiality designation assigned to the Document. |
| Redacted (yes/no) | Indicating whether the file has been redacted |
| Subject | Subject line of the email |
| File Name | Name of the file as maintained in the ordinary course |

| | |
|---|---|
| File Extension | File extension |
| Sent Date and Time | Email sent date and time; must be in the "MM/DD/YYYY HH:MM:SS" format. |
| Received Date and Time | Date and time email received; must be in the "MM/DD/YYYY HH:MM:SS" format. |
| Created Date and Time | Date and time file was created; must be in the "MM/DD/YYYY HH:MM:SS" format. |
| Modified Date and Time | Date and time file was last modified; must be in the "MM/DD/YYYY HH:MM:SS" format. |
| Author | Author of the application file |
| From | Sender of an email |
| To | Recipients of the email |
| CC | CCs of the email |
| BCC | BCCs of the email |
| File Type | Email, spreadsheet, word processing document, etc. |
| All File Paths | Location of the file or email as it is maintained in the ordinary course, including file paths for duplicate documents. |
| Record Type | Type of file (email, attachment, eFile) |
| Email Message ID | Unique identifier for email |
| Email Conversation Index | Indicating relative position of email within the conversation thread |
| Hidden Contents/Embedded Objects (yes/no) | Indicating whether file has hidden contents or embedded objects |
| Native Link | Native link for file |
| MD5 Hash | Value commonly used to deduplicate files or identify duplicates |
| Time Zone Offset | UTC-00:00 |

Metadata will be provided in a flat file (.TXT or .DAT). Each line will begin with the fields Begin Bates and End Bates, using default Concordance delimiters, as follows:

- Field delimiter—ASCII character 20 (¶)

- Text delimiter—ASCII character 254 (þ)

- Newline indicator—ASCII character 174 (®)